Approved for Release 8/11/2015

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

_____
(To be supplied by the court)

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

SEP 1 1 2015

JEFFREY P. COLWELL
CLERK

Harold J. Nicholson _____ , Plaintiff,

v.

John O. Brennan, Director, Central Intelligence Agency (CIA)

Loretta Lynch, US Attorney General

Two Unknown CIA Employees _____

_____

_____

_____

_____

_____ , Defendant(s).

(List each named defendant on a separate line.)

_____

**PRISONER COMPLAINT**

_____

(Rev. 1/30/07)

Approved for Release 8/11/2015

Page 2

## A. PARTIES



1. Harold J. Nicholson, 49535-083, U.S. Penitentiary Max (ADX)
(Plaintiff's name, prisoner identification number, and complete mailing address)
P.O. Box 8500, Florence, CO 81226-8500

2. John O. Brennan, Director Central Intelligence Agency
(Name, title, and address of first defendant)
WN DC 20505
At the time the the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

In his official capacity as CIA Director, overall in charge of CIA employees monitoring Mr. Nicholson's communications, calling for special administrative measures, and for anything CIA entities do to harass or interfere with Mr. Nicholson's family and loved ones or their communications.

3. Loretta Lynch, U.S. Attorney General
(Name, title, and address of second defendant)
950 Pennsylvania Ave., NW, WN DC 20530
At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

In her official capacity as U.S. Attorney General, responsible for issuance and conduct of Special Administrative Measures (SAMs) on Mr. Nicholson, in charge of BOP, ADX and all Federal prisoners, and for monitoring any "monitoring" agency she designates over particular SAMs.

4. Two Unknown CIA employees
(Name, title, and address of third defendant)
CIA, WN DC 20505
At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? ✓ Yes ___ No (CHECK ONE). Briefly explain your answer:

In their official capacities as employees of the Central Intelligence Agency responsible for "monitoring" Mr. Nicholson's communications, denying Mr. Nicholson's requests for SAM modifications and calling for increased sanctions on Mr. Nicholson, in an arbitrary and vindictive manner.

(If you are suing more than three defendants, use extra paper to provide the information requested above for each additional defendant. The information about additional defendants should be labeled "A. PARTIES.")

(Rev. 1/30/07)                              2

Approved for Release 8/11/2015

Page 3

## B. JURISDICTION

1. I assert jurisdiction over my civil rights claim(s) pursuant to: (check one if applicable)

   ___   28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

   ✓   28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal prisoners)

2. I assert jurisdiction pursuant to the following additional or alternative statutes (if any):

   Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq.,

   5 U.S.C. § 702, 5 U.S.C. § 706 (2)(A),(B)

## C. NATURE OF THE CASE

BRIEFLY state the background of your case. If more space is needed to describe the nature of the case, use extra paper to complete this section. The additional allegations regarding the nature of the case should be labeled "C. NATURE OF THE CASE."

- Mr. Nicholson is a former U.S. Army Airborne Ranger captain and Vietnam War era veteran with 6 years Regular Army service in East Asia and the U.S. He was a Distinguished military Graduate from University, a Commandant's List (top 20%) graduate of both the U.S. Army Infantry Officer's Course and the military Intelligence Officer's Advanced Courses with added qualifications in SCUBA, Signals Intelligence Electronic Warfare and Psychological Operations.

- Upon his Honorable Discharge from the Army he entered the Central Intelligence Agency's (CIA) Operations Directorate, serving 16 years conducting clandestine operations world-wide, serving as a senior instructor at the CIA's Field Tradecraft Course.

- Mr. Nicholson has B.S. and M.Ed. degrees as well as advanced graduate studies abroad, was operationally certified in Tagalog and Romanian languages and received additional training/in-country familiarization in French, German, Russian, Japanese and Thai.

- In service to the communities in which he lived, he has provided volunteer community counseling to U.S. servicemen and their families, has been both Cubmaster and Webelos Den Chief for young American Cub Scouts, Assistant Scout Master and Eagle Scout Coordinator for American Boy Scouts abroad and coach of various youth sports leagues.

- Mr. Nicholson is currently 64 years old and has less than nine years remaining on a combined 31 year 7 month sentence he is currently serving under Special Administrative measures (SAMs) at the Supermax Penitentiary in Florence, CO. He has no record of violence in any crime nor in any of his nearly 19 years of prison, including over 12 years in General Population.

- In 1997 Mr. Nicholson pled guilty to the charge of Conspiracy to Commit Espionage between 1994 and 1996 and was sentenced to 23 years 7 months. At the time he was sole custodian of his 3 dependent children.

- In January 2011 he was sentenced to an additional 8 years consecutively on pleading guilty to one charge of Conspiracy to Act as An Agent of a Foreign Government and one charge of Conspiracy to Commit Money Laundering stemming guidance from guidance

(Rev. 1/30/07)                                      3

Approved for Release 8/11/2015

C. NATURE OF THE CASE (continuation)

and assistance he provided his youngest son in obtaining financial help from the Russian government during a time of financial hardship for his children from 2006 to 2008.

- After his second sentencing he was transferred to the Communication Management Unit (CMU) at Terre Haute, IN where he adapted well to this new, more restrictive environment and secured a job. Despite no incidents at all there, on 1 July 2011 the Attorney General at the CIA Director's request imposed SAMs on Mr. Nicholson, returning him to solitary confinement and eventual transfer to the SAM unit at the ADX Penitentiary in Florence, CO, where SAMs have automatically been renewed every year since, becoming more restrictive, rather than less, at CIA instigation.

- On 6 April 2015, a SAM modification removing his 90-year old mother and 85-year old father from his approved phone and visitation lists was issued by the AG at CIA behest with no indication or claim that Mr. Nicholson had attempted to pass or reveal classified information harmful to U.S. National security — the only stated purpose for the CIA Director's request for SAMs.

- Throughout the SAM period, the CIA has continued to deny every request Mr. Nicholson has made to renew limited and monitored correspondence with his fiancée, with 3 credit Reporting Agencies he had been, prior to SAMs, been working with to correct his credit reports and investigate possible identity theft, and every other request for contact with other family members — all with the Attorney General's carte blanche sanction.

Approved for Release 8/11/2015

Page 4

C. NATURE OF THE CASE (continuation)

- In addition to the excessive restrictions on his First Amendment rights noted above, at no time has Mr. Nicholson been afforded his Fifth Amendment right to effective Due Process in being permitted to examine evidence, if any, that the CIA may have to support either their calls for SAM renewals or their pro forma refusals of Mr. Nicholson's requests noted above or the evidence, if any, calling for increased sanctions and to rebut such evidence before an independent adjudicator until now —all with the AG's sanction.

- In all this vindictive, capricious and arbitrary behavior on part of the CIA, there has been no effective oversight or effort by the AG to limit CIA monitors' overreach or abuse in inflicting added hardship/punishment on Mr. Nicholson and, by extension, his family and future.

- As a last resort, Mr. Nicholson is seeking the Court's intervention in helping put a stop to the excessive and abusive restrictions to his constitutional rights noted in the following claims being committed against him at the behest of a vindictive intelligence agency with no judicial mandate (beyond his SAM monitoring responsibilities) that as recently as December 2014 was noted in a front page "USA TODAY" report on a recently released U.S. Senate Intelligence Committee finding as being, "a rogue agency that oversteps its bounds, manages its work poorly and then lies about it when confronted." (Please see EXHIBIT L)

Approved for Release 8/11/2015

### D. CAUSE OF ACTION

1. Claim One: FIRST AMENDMENT: Freedom of Speech, Freedom of Association, Incoming/outgoing Communication

Supporting Facts:

- Mr. Nicholson has a right protected by the First Amendment to the United States Constitution to communicate with other persons, including particularly family members and friends, notwithstanding his status as a prisoner.

- Upon imposition of Special Administrative Measures (SAM) against Mr. Nicholson on 1 July 2011, he was permitted to have limited written, phone and visitation rights with his elderly parents Marvin (now 85) and Betty (now 90) Nicholson. (EXHIBIT A)

- On 6 April 2015, at CIA instigation, Mr. Nicholson's right to call and visit with his parents were rescinded in a SAM modification notice which stated their authority to do so as Provision 1(b) of his original SAM even though that provision specifically states such modification is only permitted if it "DOES NOT CREATE A MORE RESTRICTIVE SAM" (Provision 1(b) of EXHIBIT A) which this modification unquestionably did. (EXHIBIT B)

- The only reason provided for this excessively harsh measure was that Mr. Nicholson had asked his parents pass "third party messages", giving no further details or how this action caused or attempted to cause violence, disrupt the orderly running of the institution or threaten National security, the latter being the only purpose provided in justifying SAMs against

Approved for Release 8/11/2015

Page 6

D. CAUSE OF ACTION (continued)

1. Claim One Supporting Facts (continued)

Mr. Nicholson at all. (EXHIBITS A and B)

- In the most recent pro forma renewal of SAMs on Mr. Nicholson dated 26 June 2015 (EXHIBIT C), an attempt to justify removal of his elderly parents from his phone and visitation lists referred to a 14 November 2014 phonecall to his mother regarding a "scarf."

- The "scarf" was the cause of the CIA having all Mr. Nicholson's phone and mail privileges stopped for several weeks and then having his phone and visitation privileges with both parents stopped permanently with a SAM modification order followed by the yearly SAM renewal order. (EXHIBITS B and C).

- In fact, the entirely harmless 14 November 2014 phonecall included a brief mention by Mr. Nicholson to his mother that as a result of recently having learned to crochet as part of the prison hobbycraft program, he had recently sent 3 pre-approved crochet scarves home and asked his mother to give one to his sister, keep one for herself and, if she intended to send a Christmas package that coming Christmas, to possibly put a third in with it.

- The CIA monitors, consistently looking for any reason to inflict added hardship on Mr. Nicholson, seized on this and decided he was attempting to pass this implied "dangerous" scarf to his fiancée of 20 years who had, until SAMs, been on his approved phone, visitation and correspondence lists for 14 years. (EXHIBITS F and G

Approved for Release 8/11/2015

D. CAUSE OF ACTION (continued)

   1. Claim One Supporting Facts (continued)

also subject of Claim Two).

   —The shadowy foreign "third party" cited in the most recent SAM renewal justification on Mr. Nicholson (EXHIBIT C) is, in fact, his fiancée who is not a co-conspirator, not specifically banned by the SAM

   — EXHIBIT C SAM renewal justification makes reference to what is called "cryptic" messages from Mr. Nicholson to his parents regarding this shadowy third party (his fiancée) but, as EXHIBITS D and E (two of the rejected letters the CIA claims were cryptic) clearly show, Mr. Nicholson wrote openly to his family to encourage them to stay in contact with his fiancée during what he fully expected to be only a brief hiatus until he was permitted to get her back on his approved correspondence list.
   — Showing just how far the CIA monitors have stooped to hinder even a hint of Mr. Nicholson's relationship with his fiancée, they had all Mr. Nicholson's phone and mail contact with his mother stopped indefinitely following a 22 August 2013 phonecall in which Mr. Nicholson's mother informed him his fiancée had sent an e-mail saying her mother had been diagnosed with cancer, to which Mr. Nicholson, as any normal human being might, responded with sorrow asking that his love be conveyed to her and her family.

Approved for Release 8/11/2015

Page 8

D. CAUSE OF ACTION (continued)
    1. Claim One Supporting Facts (continued)

    — This "expression of love" incident resulted in a six month mail and phone suspension with his mother that, like the "scarf" incident was an overreaction that again had absolutely no bearing on national security and was clearly vindictive in nature.

    — Listed in EXHIBIT C SAM Renewal of 26 June 2015 in support of the removal of Mr. Nicholson's phone and visitation rights with his elderly parents is an "April 2003 letter" Mr. Nicholson wrote that "appeared" to circumvent the SAM, a date that preceeded any SAMs on Mr. Nicholson by 8 years.

    — Because all the references made to "third parties" in justifying SAM renewals on Mr. Nicholson by the CIA and AG concern his fiancée (and also used to justify removal of his parents from his phone and visitation lists), it must be noted that Mr. Nicholson's parents were in contact with his fiancée prior to Mr. Nicholson's incarceration 19 years ago and have tried to remain in contact until now.

    — Soon after SAMs were instituted on Mr. Nicholson, his mother reported that none of their postal mailings to her were getting through — stopped in the U.S. and returned to them without explanation or simply dis-appearing enroute suspiciously — in any case

Approved for Release 8/11/2015

D. CAUSE OF ACTION (continued)

  1. Claim One Supporting Facts (continued)

not arriving to his fiancée.

  - The CIA, as detailed in Claim Two, has obstinately refused, since implementation of SAMs four years ago, to permit Mr. Nicholson's resumption of correspondence with his fiancée and their manic overreaction even to his asking his family to keep contact with her during what is a very trying time for her is quite likely evidence that this current mail interference between his family and fiancée is due to CIA use of proxies both in the U.S. and abroad – unchecked abuse of the authorities given the CIA by the AG.

  - In none of the incidents noted in EXHIBITS B or C have Mr. Nicholson been accused of disclosing or even attempting to disclose classified information harmful to U.S. National security, the sole stated purpose given by the CIA Director for requesting SAMs on Mr. Nicholson to begin with.

  - The "scarf incident" seized on by the CIA monitors to stop Mr. Nicholson's phone and visitation rights with his parents noted above was not, as claimed, even a message at all – it was a scarf.

  - The overly harsh, capricious, arbitrary and vindictive acts of the CIA, with AG complicity, to remove Mr. Nicholson's right to talk or visit with his very elderly parents are no way necessary to protect governmental interests in security, order or rehabilitation, and, in fact, directly harms the latter.

Approved for Release 8/11/2015

Page 10

D. CAUSE OF ACTION (continued)

1. Claim One Supporting Facts (continued)

- Mr. Nicholson is entitled to immediate restoration of his First Amendment rights to talk with his parents unless Defendants are able to reasonably show that the governmental interests noted above have been threatened by his past calls. [1]

(Ref. U.S. District Court for the District of Colorado Civil Action No. 07-CV-02697-MSK-BNR, Khalfan Khamis Mohammed v Eric Holder, Harley Lappin, Ron Wiley, Harrell Watts, and the Federal Bureau of Investigation, Findings of Fact, Conclusions of Law, and Order Filed 06/17/14)

Approved for Release 8/11/2015

2. Claim Two: FIRST AMENDMENT: Incoming/Outgoing Correspondence

Supporting Facts:

- Mr. Nicholson has a right protected by the First Amendment to the United States Constitution to correspond with other persons, including particularly family members and friends, notwithstanding his status as a prisoner.

- Beginning with the imposition of SAMs on 1 July 2011, Mr. Nicholson has been denied the right to communicate with his fiancée, Ms. Kanokwan Lehliem, despite that for 14 years prior to SAMs the CIA had monitored all phone conversations and reviewed/approved all mail correspondence between him and Ms. Lehliem with no expressed security concerns.

- Mr. Nicholson was engaged to be married to Ms. Lehliem prior to his incarceration, had introduced her personally to his family and has now remained engaged to her for the past 20 years with plans to marry upon his release.

Approved for Release 8/11/2015

2. Claim Two (continued)

Mr. Nicholson's case beyond acknowledgment that she and Mr. Nicholson are engaged to be married.

  - Although for financial and logistical reasons Ms. Lehliem was unable to do so, she was approved by the CIA and DOJ to visit with Mr. Nicholson as his "significant other" while Mr. Nicholson was incarcerated at FCI Sheridan, Oregon from 1997 to 2011. (EXHIBIT G)

  - Despite repeated requests, since imposition of SAMs, by Mr. Nicholson to resume correspondence with Ms. Lehliem (proposing even to limit himself to one pre-approved outgoing letter to Ms. Lehliem per month) (EXHIBIT H), the CIA continues their obstinate pro forma denials stating simply that they have "unspecified "security" concerns with no supporting explanation provided or requested by the AG to back this claim. (See also EXHIBIT M)

Approved for Release 8/11/2015

Page 13

2. Claim Two (continued)

- As detailed in Claim One, in addition to denying Mr. Nicholson's right to correspond with his fiancée, the CIA has used his attempts to encourage his family's continued contact with her against him, resulting in the removal of his right to phone or visit with his very elderly parent.

- Also as detailed in Claim One, Mr. Nicholson's mother informed him that after imposition of SAMs on him, even her postal mail to Ms. Lehliem was suddenly being stopped and returned to his mother without explanation or disappearing enroute — quite possibly at CIA behest through proxies.

- As evidence that Ms. Lehliem's mail was undergoing interference upon the CIA's call for SAMs in July 2011, Ms. Lehliem's final letter to Mr. Nicholson (EXHIBIT I) just before full implementation of SAMs, attests to a possible attempt at intimidation by CIA proxies in Thailand through her comment in broken English, " I have (received) (your) latest letter but the letter I got was torn and broken which (caused me to realize) it had passed by several hands by (scanning) and reviewing (in such an obvious way) that made me uncomfortable to write to you at the moment."

Approved for Release 8/11/2015

Page 15

2. Claim Two (continued)

— Ms. Lehliem was well aware that all of her correspondence with Mr. Nicholson was read by CIA and BoP censors routinely, so her expressed concern noted above was undoubtedly due to the fact that Mr. Nicholson's letter had been so obviously opened and perused before given to her — a bully tactic employed by several police and intelligence services abroad that Mr. Nicholson is very familiar with in effort to intimidate the recipient, some close to the CIA.

— Defendants are restricting Mr. Nicholson's correspondence to a degree greater than is necessary or essential to the protection of governmental interests of security and order and continued denial (now for a fifth year) of his right to correspond with his fiancée is a violation of the governmental interest in Mr. Nicholson's rehabilitation, hindering his successful post-incarceration future, marriage and re-integration into society.

— Mr. Nicholson is entitled to immediate restoration of his First Amendment rights to engage in limited, monitored correspondence

Approved for Release 8/11/2015

Page 15

2. Claim Two (continued)

with his fiancée Ms Lehliem, except to the extent Defendants are able to reasonably show that these severe restrictions upon these rights are legitimately necessary to protect one or more of the governmental interests of security and order.[1]

‑ Finally, Mr. Nicholson's family and fiancée should be free from petty harassment by USG and specifically CIA proxies either in the U.S. or abroad simply because of their relationships with Mr. Nicholson.

[1] (Ref. U.S. District Court For The District Of Colorado Civil Action No. 07-CV-02697-MSK-BNB, Khalfan Khamis Mohammed v. Eric Holder, Federal Bureau of Investigation, et al., Findings Of Fact, Conclusions Of Law, And Order Filed 06/17/14)

Approved for Release 8/11/2015

Page 16

3. Claim Three: FIRST AMENDMENT: Incoming/Outgoing Correspondence

Supporting Facts:

— mr. Nicholson has a right protected by the First Amendment to the United States Constitution to correspond with other persons not withstanding his status as a prisoner.

— Prior to imposition of Special Administrative Measures (SAM's) on 1 July 2011, mr. Nicholson had been in CIA-monitored and approved correspondence with the three main U.S. credit reporting agencies (Transunion, Equifax and Experian) attempting to correct his credit reports and to investigate possible identity theft committed against him.

— After imposition of SAMs mr. Nicholson made multiple requests (FEB 2014, MAY 2014, JUN 2014, OCT 2014) for a minor SAM amendment to permit him to complete his interactions with the above companies and to clear up anything in his credit reports that might adversely affect his post-incarceration future.

— All of these requests were denied by the CIA monitors without explanation either to mr. Nicholson or apparently to the AG (who also apparently grants the CIA this carte blanche authority outside their SAM-detailed, limited responsibility to monitor for "classified information harmful to National security or information harmful to others."

— Defendants are thereby restricting mr. Nicholson's correspondence to a degree greater than is necessary or essential to the protection of governmental interests in security and order and, in fact, hindering the governmental interest in mr. Nicholson's rehabilitation and post-incarceration future.

— mr. Nicholson should be entitled to immediate restoration of his First Amendment right to engage in this limited and monitored correspondence described above except to the extent Defendants are able to reasonably show that restrictions on that right are legitimately necessary to protect governmental interests of order or security.

(Rev. 1/30/07)

Approved for Release 8/11/2015

Page 17

D. CAUSE OF ACTION

4. Claim Four: FIFTH AMENDMENT: Due Process
Supporting Facts:

- Mr. Nicholson has a right protected by the
Fifth Amendment to the United States Constitution
to due process of law before his liberty is
further restricted or deprived.

- From the time of Mr. Nicholson's entry into
the Federal Bureau of Prisons (BoP) in 1997, the CIA
bargained for and received authorization to review all
of his personal mail and monitor all of his non-legal
phonecalls, which they did with no security concerns
whatsoever noted.

- In January 2011, Mr. Nicholson was transferred
from FCI Sheridan, OR to the Communications Manage-
ment Unit (CMU) at Terre Haute, IN, a unit
specifically created to limit and monitor all communi-
cations of non-violent offenders (which includes
Mr. Nicholson who has had no violence in his crimes or
in any of his prison time) without the added punish-
ment of 24-hour solitary lock-down. (See U.S.
District Court, Southern District of Indiana Findings
of Facts and Conclusions of Law Case 2:09-cv-
00215-Jms-mJD Pages 2-5 for details concerning
the CMU).

Approved for Release 8/11/2015

Page 18

4. Claim Four (Continued)

- On 1 July 2011, despite having just arrived several months earlier at the CMU and with no incidents or security issues arising, SAMs were imposed by the AG at CIA request with no due process afforded Mr. Nicholson to challenge or rebut the very general but highly distorted reasons and assertions made to justify them and Mr. Nicholson's return to solitary confinement.

- Since then SAMs have been automatically renewed and even made more restrictive, without affording Mr. Nicholson the opportunity to even see the evidence, if any, the CIA claims to support a need for SAMs, much less the opportunity to challenge any such evidence before an independent adjudicator (EXHIBIT C being the most recent, 26 July 2015, renewal of SAMs)

- The SAMs on Mr. Nicholson state their sole purpose as requested by the CIA Director as preventing the "disclosure of classified information that might threaten U.S. national security." (EXHIBIT C, page 3)

- Despite the very specific purpose noted by the CIA Director, his organization and

Approved for Release 8/11/2015

Page 19

4. Claim Four (continued)

the employees/monitors he has assigned to review Mr. Nicholson's correspondence and phonecalls for any "classified" information, routinely have been permitted to deny every request he has made to resume limited, monitored correspondence with his fiancée, have routinely denied letters in which he has encouraged his family to stay in contact with his fiancée, have denied him an incoming photo sent by his daughter of his daughter-in-law (ostensibly because persons in the background at the park where it was taken could not be identified by them), have denied him the opportunity even to write to his approved daughter that he was proud of his youngest son (with whom he is forbidden to correspond as a result of a co-conspirator condition), have denied letters from his mother because she mentioned a "scarf", of all things, and have most recently removed his right to phone or visit with his very elderly (90 and 85 years) parents because the monitors "assumed" he'd asked his mother to send a crochet scarf to his fiancée as a Christmas present. (EXHIBIT C and detailed in Claim One above.)

Approved for Release 8/11/2015

Page ~~##~~ 20

4. Claim Four (continued)

- In the SAM extension of 26 June 2015 (EXHIBIT C), the very subjective, prosecutorial language used to change Mr. Nicholson in his previous changes is repeated including the cherry-picked, partial sentence of Mr. Nicholson's courtroom statement made at sentencing saying that, "you apologized to the Russian Federation for any embarassment your 'conviction' caused that government." (EXHIBIT C page 2)

- Attached as EXHIBIT J is the complete text of Mr. Nicholson's courtroom statement in which it is shown that the precise wording of this cherry-picked prose came with a qualification, "And insofar as their efforts were truly to help my children, I regret the embarassment that this ('incident', not 'conviction') caused them as well."

- The statement noted above was made in consultation with Mr. Nicholson's attorney to address two concerns: 1) that Mr. Nicholson had some suspicion that his son's contacts with the Russians had been "given up" by them as a cover for a Russian double agent's bona fides (since Mr. Nicholson had no information to provide to them after then 12 years imprison

Approved for Release 8/11/2015

Page 21

4. Claim Four (continued)

and 2) that those in the U.S. Government (specifically
elements within the CIA), as well as some in the
Russian government and intelligence services would now
be able to use this highly publicized incident as fuel
to fire a return to the Cold War (something that
recent events attest to).

—[EXHIBIT C], while rehashing the same wording
from the initial SAMs (EXHIBIT A), plus exaggerating
Mr. Nicholson's attempts to have his family retain
contact with his fiancée while he is temporarily
unable to write to her or receive her letters,
failed to even make mention of Mr. Nicholson's
input submitted first in (EXHIBIT K) and repeated
during his 9 June 2015 "official meeting" to discuss
whether SAMs should be removed (a meeting
attended only by two representatives from the
ADX prison legal team).

—That once-per-year input is all that passes
for due process in deciding whether SAMs are
renewed or not and undoubtedly was not even
considered by the AG who already had prepared
the renewal which was provided to Mr. Nicholson
only 12 working days later after having traveled the
bureaucratic gamut between the CIA, FBI, BOP
and prison in-betweens.

Approved for Release 8/11/2015

Page 22

4 Claim Four (Continued)

- Contrary to the statement in Mr. Nicholson's 26 June 2015 SAM renewal that, "Your behavior suggests that there has been no change in your proclivities or sympathies," Mr. Nicholson's input in (EXHIBIT K) specifically addresses why that statement is false. (EXHIBITS C, page 2 and EXHIBIT K).

- Had the SAM renewal process been in the least fair or made any effort to at least pretend to have included a due process exercise, Mr. Nicholson's input would have been included or at least acknowledged as contradicting such a blatant, sensational and false statement.

- At no time since December 2008 has Mr. Nicholson been accused of attempting to pass any information at all to any foreign intelligence service much less classified information harmful to U.S. national security.

- Also contrary to the statement regarding Mr. Nicholson's sympathies and overall accusatory tone of the SAM is the fact that Mr. Nicholson has made an effort to assist CIA objectives against a particular target abroad — an effort that has predictably again gone ignored to the detriment of U.S. interests. (This EXHIBIT con

Approved for Release 8/11/2015

Page 23

4. Claim Four (continued)
be provided the Court, sealed, if requested.)

— The CIA actions noted above are arbitrary, capricious and vindictive in nature and are taken with the express sanction of the Attorney General without affording Mr. Nicholson due process to challenge or rebut them before an independent adjudicator until now.

— Permitting the CIA, an intelligence organization with no judicial mandate that as recently as 10 December 2014 was noted in a front page "USA TODAY" article about a newly released U.S Senate Intelligence Committee Report to be, "a rogue agency that oversteps its bounds, manages its work poorly and then lies about it when confronted," (EXHIBIT L) to exercise nearly carte blanche authority to inflict added hardship on Mr. Nicholson and his loved ones without permitting him the opportunity to see and rebut any claims or evidence supporting such claims before an independent adjudicator is a violation of his due process rights noted in the Fifth Amendment to the United States Constitution. (See 10 December 2014 "USA Today" front page article by Ray Locker — EXHIBIT L)

Approved for Release 8/11/2015

Page 24

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes ⨯ No (CHECK ONE). If your answer is "Yes," complete this section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit: _____

2. Docket number and court name: _____

3. Claims raised in prior lawsuit: _____

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?): _____

5. If the prior lawsuit was dismissed, when was it dismissed and why? _____

6. Result(s) of any appeal in the prior lawsuit: _____

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

    ⨯ Yes ___ No (CHECK ONE).

2. Did you exhaust available administrative remedies? ⨯ Yes ___ No (CHECK ONE).

(Rev. 1/30/07)

Approved for Release 8/11/2015

Page 25

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF."

— For an order directing that Mr. Nicholson's First Amendment Right to speak with his elderly parents Marvin and Betty Nicholson be restored unless Defendants are able to reasonably show that he caused or attempted to cause violence, disrupt, the orderly running of the institution or threaten National security by the revelation of classified information in violation of his SAMs. (due to their advanced ages, urgency in this request is extremely important.)

— For an order directing that Mr. Nicholson's First Amendment Right to have limited, monitored correspondence with his Fiancée Kanokwan LEHLIEM be restored unless Defendants are able to reasonably show that restrictions upon that right are legitimately necessary to prevent violence, disrupt the orderly running of the institution or threaten National security through the revelation of classified information.

(Please see continuation attached)

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed on ___16 July 2015___
                    /(Date)

_____
(Prisoner's Original Signature)

(Rev. 1/30/07)

Approved for Release 8/11/2015

Page 26

G. REQUEST FOR RELIEF (continued)

- For an order directing that Mr. Nicholson be permitted to have limited, monitored correspondence with the three main U.S. credit Reporting Agencies (Transunion, Equifax and Experian) for the purpose of correcting his credit reports and determining whether he has been and/or continues to be a victim of identity theft.

- For an order directing the Attorney General investigate and provide sworn testimony of any US Government (USG) operations or efforts to interfere with, intercept, confiscate or stop communications (mail or other) between Mr. Nicholson's parents and fiancée, Ms. Kanokwan Lehliem, either directly or through proxies in the U.S. or abroad and for an order to cease and desist any such operations unless it can be reasonably shown that their private or other communications are a threat to U.S. national security, this in effort to curb vindictive harassment by the USG of Mr. Nicholson's parents and fiancée.

- For an order directing the CIA Director to investigate and provide sworn testimony on any CIA efforts to intercept, confiscate or otherwise stop communications between Mr. Nicholson's parents and his fiancée, Ms. Kanokwan Lehliem, directly or through proxies in the U.S. or abroad and for this order to direct the CIA Director to cease and desist any such operations

Approved for Release 8/11/2015

Page: 24
27

G. REQUEST FOR RELIEF (continued)

unless it can be reasonably shown that the private or other communications between Mr. Nicholson's parents and fiancée are in any way a threat to U.S. national security, this in effort to curb vindictive harassment at CIA instigation against Mr. Nicholson's family and loved ones in the U.S. or abroad.

- For an order directing the Attorney General appoint a third party, unbiased, adjudicator to review any CIA refusals of Mr. Nicholson's (mail or) requests for limited additional correspondence with his extended family members and friends to determine if such refusals are necessary to prevent the disclosure of classified information harmful to U.S. national security and, if not, to recommend their approval to the AG, in effort to curb CIA overreach.

- For an order directing the Attorney General to review the "one-size-fits-all" nature of all SAMs to determine whether the many completely unrelated restrictions to the purpose of Mr. Nicholson's SAM ("to prevent disclosure of classified information") are necessary and to make changes when they are not — making the SAM truly "administrative" and not, as it currently is, "punitive" in nature.

Approved for Release 8/11/2015

G. REQUEST FOR RELIEF (continued)

- For an order awarding any attorney, legal firm or entity that may come forward to assist Mr. Nicholson or represent him in this suit his/her/their full legal expenses.

- For an order appointing an attorney to represent Mr. Nicholson in this suit expressly to provide him a fair opportunity to contest the massive legal effort that can and likely will be directed against him by the over 140-strong legal team of the CIA, not to mention the thousands available to the Attorney General, and to help him in contesting any possible documentation the CIA may attempt to over-decorate and dramatize in effort to wow the court.

- For an order directing that if respondents ~~plaintiffs~~ the do indeed attempt to wow the court with some over-classified, eyes-only piece of paper that will not be shown to Mr. Nicholson, that Mr. Nicholson be afforded the opportunity to, using his significant experience both within the CIA and NSA including his years as Chief of Station and senior Tradecraft Instructor, explain to the court how false intelligence has been manufactured by both the CIA and NSA in the past due

Approved for Release 8/11/2015

Page 29

G. REQUEST FOR RELIEF (continued)

to both source embellishment as well as due to specific intent by active officers for promotion, attention and/or even boredom.

- For an order directing that if plainti respondents *attn attempt to claim some source is reliable due to a successful passing of a polygraph, that Mr. Nicholson be afforded the opportunity to explain how the polygraph can be beaten.

- For an order directing that if no attorney is available to represent Mr. Nicholson in this case that the Court award Mr. Nicholson his necessary expenses associated with this suit including court fees, document copying fees, postage, etc.

- For an order directing that Mr. Nicholson be permitted to receive news about and comment on or ask questions about other family members and friends, including his youngest son (with whom he is not permitted to correspond) - this to hopefully prevent some over zealous CIA monitor from having a conniption if he says he's happy for, or "proud of," his son.

- Finally, Mr. Nicholson requests the Court to rule on the constitutionality of Special Administrative Measures overall.

Approved for Release 8/11/2015

Page 
3D

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? ___ Yes  X  No  (CHECK ONE).  If your answer is "Yes," complete this section of the form.  If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information for each additional lawsuit.  The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit: _____

2. Docket number and court name: _____

3. Claims raised in prior lawsuit: _____

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?): _____

5. If the prior lawsuit was dismissed, when was it dismissed and why? _____

6. Result(s) of any appeal in the prior lawsuit: _____

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?

   X  Yes  ___  No  (CHECK ONE).

2. Did you exhaust available administrative remedies?  X  Yes  ___ No (CHECK ONE).

(Rev. 1/30/07)                              7