IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-01999-KLM

HAROLD J. NICHOLSON,

     Plaintiff,

v.

JOHN O. BRENNAN, Director Central Intelligence Agency (CIA),
LORETTA LYNCH, U.S. Attorney General, and
TWO UNKNOWN CIA EMPLOYEES,

     Defendants.

---

## ORDER

---

**ENTERED BY KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE.**

This matter is before the Court on Defendants' **Motion to Dismiss the Second
Amended Complaint For Failure to State a Claim and For Lack of Subject-Matter
Jurisdiction** [#57][1] (the "Motion").  Plaintiff, who proceeds pro se,[2] filed a Response [#60]
in opposition to the Motion, and Defendants filed a Reply [#62].  The Court also permitted
Plaintiff to supplement his briefing after Defendants filed a Notice of Supplemental
Authorities.  *See* [#72, #81].  The Court has reviewed all briefing on the Motion, the entire

---

[1]  "[#57] is an example of the convention the Court uses to identify the docket number
assigned to a specific paper by the Court's case management and electronic case filing system
(CM/ECF).  This convention is used throughout this Order.

[2]  The Court must construe the filings of pro se litigants liberally.  *See Haines v. Kerner*, 404
U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the
Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual
allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf."
*See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at
1110).  In addition, pro se litigants must follow the same procedural rules that govern other litigants.
*Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#57] is **GRANTED**.[3]

# I. Background[4]

## A.    Procedural Posture and Relevant Facts

Plaintiff, who proceeds as a pro se litigant, is an inmate at the Florence ADMAX United States Penitentiary in Florence, Colorado ("ADX").  *See Second Am. Compl.* [#56].  Plaintiff initiated this case by filing a Prisoner Complaint [#1].  On October 28, 2015, Plaintiff was ordered to file an amended complaint.  *Order* [#10].  Plaintiff filed the Amended Complaint [#29] on March 16, 2016.  Plaintiff then filed a motion for leave to amend his pleadings, which the Court granted on August 29, 2016.  *Minute Order* [#55].  Plaintiff filed the Second Amended Complaint [#56] on August 29, 2016.

In 1997, Plaintiff was sentenced to twenty-three years and seven months in prison after pleading guilty to one charge of conspiracy to commit espionage.  *Second Am. Compl.* [#56] at 4.  He was thereafter incarcerated at FCI Sheridan, Oregon.  In 2011, while still incarcerated, he was sentenced to an additional eight years after pleading guilty to one charge of conspiracy to act as an agent of a foreign government and one charge of conspiracy to commit money laundering.  *Id.*  He was thereafter transferred to the

---

[3]    This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c), on consent of the parties. *See Order of Reference* [#43].

[4]    The Court construes all of the well-pled allegations in the Second Amended Complaint in favor of Plaintiff, the non-moving party.  *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).   The Court notes that Plaintiff has attached various documents to his Second Amended Complaint.  The documents will be addressed as necessary.  *See Second Am. Compl.* [#56] at 30-56.

Communications Management Unit in Terre Haute, Indiana. *Id.* After Plaintiff's 2011 conviction, Special Administrative Measures ("SAMs") were implemented regarding Plaintiff's conditions of confinement. *Id.* The SAMs restrict Plaintiff's access to mail, media, telephone communications, other inmates, and visitors. *SAMs Memorandum* [#56] at 30.[5] The justification given for imposition of the SAMs is that they are "reasonably necessary to prevent disclosure of classified information by [Plaintiff]" because disclosure of such information would pose a threat to national security. *Id.* In January 2012, Plaintiff was transferred to ADX. *Second Am. Compl.* [#56] at 4. Plaintiff's SAMs have been renewed every year since 2011. *Id.* at 18.

## B.     Parties Sued

Plaintiff brings this suit against: John O. Brennan, Director of the Central Intelligence Agency ("CIA"); Loretta Lynch, U.S. Attorney General; and two unknown CIA employees. *Second Am. Compl.* [#56] at 2. Plaintiff states that he is suing them all in their official capacities. *Id.* As an initial matter, "[w]hen an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." Accordingly, the United States has effectively been named as the defendant in this case. *See Davis v. Holder*, No. 12-CV-02122-REB-KMT, 2014 WL 1713429, at *6 (D. Colo.

---

[5] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). This document is referred to in the Second Amended Complaint [#56] and is central to Plaintiff's claims.

Apr. 23, 2014) (citing *Atkinson v. O'Neal*, 867 F.2d 589, 590 (10th Cir. 1989) (citations omitted)).[6]

Plaintiff asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Administrative Procedures Act ("APA"). However, *Bivens* creates a cause of action only against federal officials in their individual capacities for money damages . . . ." *James v. Hamaker*, No. 15-cv-02425-GPG, 2016 WL 409433, at *1 (D. Colo. Feb. 3, 2016) (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005); *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). Here, Plaintiff asserts claims against Defendants in their official capacities only, and does not seek money damages. *Second Am. Compl.* [#56] at 27-29; *Response* [#60] at 2-3. Therefore, *Bivens* does not provide the basis for jurisdiction in this matter. Nevertheless, 28 U.S.C. § 1331 provides jurisdiction over claims for equitable relief arising under federal law, and such claims are not barred by the doctrine of sovereign immunity. *See Simmat*, 413 F.3d at 1232, 1233. The Court also has jurisdiction over Plaintiff's claims to the extent that they arise pursuant to the APA. *See* 5 U.S.C. § 702.

## C.    Claims

---

[6] Virtually all cases in the Tenth Circuit Court of Appeals that address claims related to SAMs are brought against the Bureau of Prisons ("BOP"). *See, e.g., Ghailani v. Sessions*, 859 F.3d 1295 (10th Cir. 2017); *Gowadia v. Stearns*, 596 F. App'x 667 (10th Cir. 2014) (suing BOP officials); *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012); *Yousef v. Reno*, 254 F.3d 1214 (10th Cir. 2001). Although the government points out that Plaintiff's "outgoing communications are monitored 'by the FBI and/or the CIA,'" the government does not address the fact that the BOP apparently *implements* the SAMs that are the subject of Plaintiff's claims. *See Motion* [#57] at 24. Because the government has failed to address the issue of whether this case should be dismissed for failure to name a proper party as a defendant, the Court also declines to address the issue.

Plaintiff brings three main claims against the Defendants pursuant to the First and Fifth Amendments. *See generally Second Am. Compl.* [#56]. In Claim One, Plaintiff challenges the SAM prohibiting him from speaking on the phone or visiting in person with his parents. Plaintiff alleges the following in support of Claim One: on November 12, 2014, Plaintiff presented scarves that he had crocheted for his parents to the assigned prisoner officials. He also submitted a letter he had written to his parents in which he mentioned the scarves and suggested to whom they might be given for Christmas. *Id.* at 8. On November 14, 2014, Plaintiff mentioned the scarves during a phone call with his parents. *Id.* On November 17, 2014, Defendants John and Jane Doe returned the letter with an instruction to remove Plaintiff's comment about the third scarf. *Id.* On December 12, 2014, Plaintiff was told that his call privileges had been suspended because Plaintiff had mentioned the third scarf during his November 14 call in violation of the November 17 instruction not to mention it. *Id.* at 9. Plaintiff thereafter was prohibited from calling his parents. *Id.* He challenges the imposition of these restrictions because they are based on Defendants' misunderstanding of the timeline of events.

In Claim Two, Plaintiff challenges the SAM prohibiting him from mail and phone contact with his fiancee, Kanokwan Lehliem ("Lehliem"). He alleges that he had been permitted regular mail and phone contact with Ms. Lehliem from 1996 until the imposition of the SAMs in July 2011. *Id.* at 12. He also raises concerns about the CIA interfering with letters between Ms. Lehliem and his family. *Id.* at 14.

In Claim Three, Plaintiff alleges that the SAMs renewal process violates his Fifth Amendment due process rights. *Id.* at 18-25. He seeks changes to the renewal process in order to make it more fair. *Id.* at 25.

In sum, Plaintiff seeks the ability to have monitored phone and visitation contact with his parents, to exchange letters with his fiancee, and requests changes to the SAMs renewal procedures. *Second Am. Compl.* [#56] at 27-29. Defendants now move to dismiss Plaintiff's claims in part for failure to state a claim, and in part due to lack of subject matter jurisdiction.[7] *See generally Motion* [#57].

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506. A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes

---

[7] To the extent that Plaintiff argues that his claims have merit because they survived review pursuant to D.C.COLO.LCivR 8.1(b), those standards are not relevant to the Court's review here, which is conducted pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

its own factual findings.  *Id.* at 1003.

**B.     Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

-7-

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III. Analysis

### A.    First Amendment Claims

### 1. Claim One:  Phone Calls and Visitation with Plaintiff's Parents

In Claim One, Plaintiff asserts that his First Amendment rights to freedom of association and speech with respect to communications with his parents have been violated.  He seeks to be able to speak to and visit with his parents.  Defendants argue that Plaintiff's claim should be dismissed because there is a rational basis for restricting his communications with his family.  *Motion* [#57] at 12.

Prisoners are protected by the Constitution, but "[their] rights may be restricted in ways that would raise grave First Amendment concerns outside the prison context." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (internal quotation marks omitted). However, "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  Thus, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

The Tenth Circuit Court of Appeals has applied the *Turner* test when an inmate brought a First Amendment claim challenging the SAMs imposed against him. *See Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012). "[I]n ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Id.* at 1240 (citing *Gee*, 627 F.3d at 1187). Thus, taken together with the pleading requirements in *Iqbal*, an inmate must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Id.* A plaintiff need not plead against any possible legitimate interest, but rather must "recite[ ] facts that might well be unnecessary in other contexts" in order for his claims to survive a motion to dismiss. *Id.*

In *Al-Owhali*, the plaintiff challenged newly imposed SAMs that prohibited him from writing to his nieces and nephews. 687 F.3d 1236, 1240-41 (10th Cir. 2012). The plaintiff alleged that the new restrictions violated his First Amendment rights because there was no legitimate rational basis for the increased restrictions, since he had complied with the previous SAMs. *Id.* The Tenth Circuit stated that, while the plaintiff "was not required to substantively rebut the government's justifications for the new restrictions" on a Rule 12(b)(6) motion, he needed to plead plausible facts supporting his claim that the communication ban did not serve the purpose of preventing future terrorist activity. *Id.* at 1241. The Court gave as an example a case that concluded that a SAMs challenge was plausible where the pleadings alleged that a warden had recommended that the plaintiff's privileges be expanded, thus indicating that the restrictions were unnecessary. *Id.* (citing *Mohammed v. Holder*, No. 07-cv-02697-MSK-BNB, 2011 WL 4501959 (D. Colo. Sept. 29, 2011)). The *Al-Owhali* Court dismissed the plaintiff's claim, finding that the allegation that

he did not violate the previous SAMs was insufficient to allege that the restriction was not supported by a legitimate penological interest. *Id.*

According to Plaintiff's own allegations, the "specific and only stated intent for the issuance of SAMs on [Plaintiff] is 'of significantly limiting the inmate's ability to communicate (send or receive) classified information.'" *Second Am. Compl.* [#56] at 7. Plaintiff does not appear to dispute the government's general stated interest in protecting national security. Rather, Plaintiff contends that the government lacks a legitimate penological reason for restricting his communications with his parents because the restrictions allegedly were imposed based on a misunderstanding.

Plaintiff alleges that on November 12, 2014, he submitted three crocheted scarves and a letter to his assigned prisoner officer, Ms. Turner, for inspection prior to mailing to the items to his parents. *Second Am. Compl.* [#56] at 8. The scarves were sent to Plaintiff's parents. *Id.* However, the letter, which Ms. Turner sent to the CIA monitors to review for classified information, included a suggestion that Plaintiff's mother keep one scarf for herself, give one to his sister, and "if she intended to send a gift package that Christmas to possibly include the third scarf with it." *Id.* On November 14, 2014, Plaintiff spoke with his parents by phone and mentioned the scarves "and his idea for their distribution as noted in his letter." *Id.* On November 17, 2014, Ms. Turner returned the letter to Plaintiff with an instruction from the CIA monitors to remove the comment about the distribution of the third scarf. *Id.* On December 12, 2014, Plaintiff was informed that all calls to his family had been suspended because he violated the November 17, 2014 instruction not to mention the third scarf by discussing it during the November 14, 2014 call. *Id.* at 9. Plaintiff alleges that Ms. Turner "electronically sent Defendant Does the exact timeline of these events to

show [Plaintiff] had not violated their instruction," but that Defendants "were adamant about stopping all [Plaintiff's] pre-Christmas calls," for "entirely vindictive" purposes. *Id.* After the Christmas break, Plaintiff was again permitted to resume calls with some of his family, but not his parents. *Id.*

The present case is similar to *Al-Owhali*, where the plaintiff argued that the heightened restrictions were unwarranted because he had not violated the SAMs. *See Al-Owhali*, 687 F.3d at 1240-41. Here, Plaintiff argues that the heightened restrictions were implemented based on Defendants' incorrect belief that Plaintiff had violated the order not to discuss the third scarf with his parents. *Second Am. Compl.* [#56] at 9. Nonetheless, Plaintiff has not sufficiently stated that there is no legitimate penological interest in maintaining the restrictions because he has not alleged that the communication ban does not serve the purpose of preventing him from potentially divulging classified information. *See id.* That Defendants were allegedly mistaken about the timing of events does not undercut the fact that restrictions on Plaintiff's communications have been imposed for national security purposes. *See Al-Owhali*, 687 F.3d at 1241. Plaintiff argues that "at no time has he ever attempted to relay classified information via phone or mail to any foreign government or intelligence service either directly or through transmittal by phone or mail to others." *Response* [#60] at 10. However, Plaintiff pled guilty – while already in prison – to "one charge of conspiracy to act as an agent of a foreign government and one charge of conspiracy to commit money laundering, both stemming from guidance and assistance provided to one of his sons in obtaining financial help from the Russian government . . . ." *Second Am. Compl.* [#56] at 4. Given that Plaintiff pled guilty to assisting one of his sons in such activities while Plaintiff was incarcerated, the Court concludes that there is a

legitimate basis for restricting Plaintiff's communications with family members.  *See id.*

As a final issue on this claim, Defendants submitted a Notice of Supplemental Authority [#72], to which Plaintiff was granted leave to respond.  *See Supplement* [#81]. In *Salim v. Lynch*, the Court dismissed a First Amendment claim similar to the one Plaintiff brings here.  No. 13-cv-03175-RM-CBS, Docket No. 95 (Nov. 30, 2016).  Plaintiff argues that his case is distinct from *Salim* because Plaintiff is not seeking to have the SAMs removed entirely, he has not engaged in any violence "in any crime nor in 21 years of prison," that there were never any security concerns with respect to Plaintiff's prior CIA-monitored communications for 14 years, and that he has met his pleading standards.  *See Supplement* [#81].  However, Plaintiff's arguments are inapposite because they do not contradict the Court's finding that there is a legitimate basis for restricting Plaintiff's communications based on his criminal convictions.

Accordingly, Claim One is **dismissed with prejudice**.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### 2. Claim Two: Communication with Plaintiff's Fiancee

Plaintiff seeks to have his SAMs modified in order to restore his ability to have limited, monitored correspondence with his fiancee, Ms. Lehliem.  *Second Am. Compl.* [#56] at 15.  Plaintiff argues that there is no logical connection between the regulation and the goal because (1) communication with Ms. Lehliem was previously approved, (2) Defendants have not provided any evidence regarding why correspondence with her would constitute a "security concern," and (3) the government would review every letter to or from

Plaintiff as a security measure.  *Response* [#60] at 3.

Plaintiff argues that Defendants' decision to restrict communications with his fiancee was not based on any evidence that such communication would cause a security problem. *Response* [#60] at 15.  However, Defendants are not required to provide any such evidence.  *See Al-Owhali*, 687 F.3d at 1240-41.  Similar to Plaintiff's claim regarding his parents, this claim fails because Plaintiff has not alleged that the communication ban does not serve the legitimate purpose of preventing him from potentially divulging classified information.  *See id.*

Accordingly, the aspect of Claim Two challenging the restrictions imposed on Plaintiff's communications with Ms. Lehliem is **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

### 3.  Alleged Monitoring of Letters Between Parents and Ms. Lehliem

Also in Claim Two, Plaintiff seeks an order directing Defendants Lynch and Brennan to investigate whether there is ongoing interdiction of private mail between Plaintiff's parents and his fiancee, and to ensure that any such interdiction be ceased immediately. *Second Am. Compl.* [#56] at 15.  Defendants argue that Plaintiff lacks standing to assert this claim because he cannot assert the rights of his parents or Ms. Lehliem.  *Motion* [#57] at 17-20.  Defendants also argue that this aspect of Claim Two should be dismissed for failure to state a claim.  *Id.*

The Court must first address Defendants' argument that Plaintiff lacks standing under Article III of the Constitution.  *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 851 (10th Cir. 2015) ("Standing is a threshold issue in every case before a federal court . . . because the standing issue implicates a federal court's subject-matter jurisdiction."

(quotations, internal citation, and emphasis omitted)).  There are two aspects to standing jurisprudence:  "Article III standing, which enforces the Constitution's case-or-controversy requirement, . . . and prudential standing which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'"  *Wilderness Soc'y v. Kane Cty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc).  One limitation imposed by the prudential standing doctrine is that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."  *Id.* at 1169.

Plaintiff argues that he has standing to assert this claim because the "evident illegal harassment of his parents and fiancee by Defendants is directly relevant to Plaintiff's own post-incarceration future and successful return to society."  *Response* [#60] at 10-11.  As an initial matter, Plaintiff's allegations that his parents' letters to his fiancee have been returned to them without explanation, have disappeared, or have been tampered with en route to Ms. Lehliem do not state more than mere speculation that the CIA or other government agencies are involved.  *Second Am. Compl.* [#56] at 14.  Plaintiff's allegations that interdiction of mail "is common to bully tactics employed by several police and intelligence services abroad" does not indicate in more than a conclusory fashion that the alleged returned, disappeared, or tampered-with letters here were a result of such tactics.  *See id.* at 14.  Furthermore, even if Plaintiff sufficiently alleged that Defendants are interfering with the mail, he has not asserted his own legal right, as opposed to the legal rights of third parties (his parents' First Amendment right to send letters, and his fiancee's

First Amendment right to receive them). *See Warth*, 422 U.S. at 499. It is unclear what right Plaintiff could assert on his own behalf based on his explanation that the exchange of letters between his parents and fiancee affects his "successful return to society."

Accordingly, this aspect of Claim Two is **dismissed without prejudice** for lack of subject matter jurisdiction. *See Brumfiel v. U.S. Bank*, 618 F. App'x 933, 938 (10th Cir. July 24, 2015) (affirming dismissal of complaint without prejudice based on lack of standing).

## B.    Claim Three:  Procedural Due Process Pursuant to the Fifth Amendment

Plaintiff seeks changes to the SAMs renewal process "to afford a truly fair and timely opportunity for affected prisoners to see and challenge any alleged justifications made for SAM extensions" and to permit presentation of requested modifications to an "unbiased adjudicator." *Second Am. Compl.* [#56] at 25. Plaintiff argues that his SAMs have been "automatically" renewed for the past six years, "occasionally adding additional restrictions" without affording procedural due process. *Response* [#60] at 4.

### 1.  Whether Plaintiff Has a Protected Liberty Interest

"The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." *Chambers v. Colo. Dep't of Corr.*, 205 F.3d 1237, 1242 (10th Cir. 2000) (quotations omitted). A plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, he must show that the procedures used in addressing his liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149.

Defendants argue that Plaintiff lacks a protected liberty interest in the conditions of

his SAMs. The Supreme Court has held that, for prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The Tenth Circuit Court of Appeals has ruled that liberty interest claims by prisoners are "to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)). "[T]he touchstone of the inquiry . . . is not the language of regulations regarding those conditions but the nature of those conditions themselves in relation to the ordinary incidents of prison life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal quotation marks and citation omitted). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

In *Rezaq v. Nalley*, this court considered four nondispositive factors appropriate for determining what qualifies as atypical and significant hardship. These factors include whether: (1) the treatment relates to and furthers legitimate penological interests; (2) the conditions complained of are extreme; (3) the treatment increases the duration of confinement; and (4) the treatment is of indeterminate length. 677 F.3d 1001, 1012 (10th Cir. 2012) (citing *Estate of DiMarco v. Wyoming Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir.2007)). Although these factors are useful, the key to the determination is "a fact-driven assessment that accounts for the totality of the conditions presented by a given inmate's sentence and confinement." *DiMarco*, 473 F.3d at 1342.

To satisfy the first factor, there need only be a "reasonable relationship" between the

SAMs imposed and the asserted penological interests. *Id.* at 1014. As discussed above, Plaintiff was convicted of divulging classified information to a foreign nation. Thus, the restrictions on Plaintiff's communications relate directly to the prevention of threats to national security. *See Gowadia v. Stearns*, 596 F. App'x 667, 673-74 (10th Cir. 2014) (finding a legitimate penological interest where there was "an obvious and reasonable relationship" between plaintiff's conviction for disclosure of classified defense information and the restrictions on his communications); *see also Sattar v. Holder*, No. 07-CV-02698-PAB-KLM, 2012 WL 882401, at *8 (D. Colo. Mar. 15, 2012) (finding no protected liberty interest was implicated by SAMs because the restrictions related to "prevention of communications that could threaten national security"). Plaintiff's contention that he has not "ever attempted to subvert the SAMs by revealing classified information" since they were imposed is inapposite, as his contention merely tends to demonstrate the effectiveness of the SAMs. *See Second Am. Compl.* [#56] at 23. The Court concludes that the first factor weighs against finding a protected liberty interest.

As to the second factor, the Tenth Circuit has already established that the conditions at ADX, while "undeniably harsh," are not atypically extreme. *See Rezaq*, 677 F.3d at 1014-15; *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639 (10th Cir. 2006) (finding that the conditions at ADX do not impose an atypical and significant hardship); *see also Gowadia*, 596 F. App'x at 673 (finding that the SAMs restricting communications "do not, standing alone, amount to extreme conditions"). Therefore, the second factor weighs against finding a protected liberty interest.

Plaintiff does not contend that Defendants' actions have resulted in an increase in the duration of his confinement. Therefore, the third factor weighs against finding a

protected liberty interest.

The fourth factor is whether the treatment is of indeterminate length. A critical part of the determination of whether the treatment is indefinite is whether the conditions are subject to periodic review. "In *Rezaq* [the Tenth Circuit] explained that prisoners confined at ADX are provided with periodical reviews of their placement in which they have a number of procedural protections, including the opportunity to participate and a right to appeal." *Gowadia*, 596 F. App'x at 673. Plaintiff's allegations here demonstrate that he receives yearly reviews, which have been found sufficient in other cases in this district. *See Ghailani v. Holder*, No. 14-cv-00041-CMA-BNB, 2015 WL 430375, at *8 (D. Colo. Jan. 30, 2015) (collecting cases). The Court notes Plaintiff's contentions that his SAMs are "automatically extended" without effective due process and that he has not been shown, or given the opportunity to rebut, Defendants' evidence prior to the renewals. *Second Am. Compl.* [#56] at 18. However, these statements are unsupported by Plaintiff's other allegations. For example, Plaintiff states that in June 2015, he met with two members of the prison legal team "to discuss any reasons [Plaintiff] had as to why SAMs should not be extended and what modifications to his SAMs he wanted to request if they were extended." *Id.* at 19. His argument that the meeting was only a semblance of due process because the SAMs extension process was completed "just 12 business days later" is unconvincing, as it is unclear why twelve business days would not be enough for several government offices to complete such a review. *Id.* Additionally, that the SAMs renewal documents "contained the same mistaken and misleading information" as previous SAMs does not necessarily indicate that Defendants did not review Plaintiff's input. *Id.* at 22. Rather, it could simply mean that Defendants disagreed with Plaintiff's input. Lastly, contrary to cases where

inmates were facing a life sentence, Plaintiff alleges that he is set to be released in less than eight years. *Cf. Wilkinson*, 545 U.S. at 224 (weighing heavily the indefinite duration of the confinement because placement disqualified inmate for parole). For the foregoing reasons, Plaintiff has not sufficiently alleged that the treatment is of indeterminate length, and the fourth factor weighs against finding a protected liberty interest.

Accordingly, the Court finds that all four factors weigh against finding that Plaintiff has a liberty interest in avoiding the conditions imposed by SAMs, and does not reach the question of whether Plaintiff received adequate process. *See Rezaq*, 677 F.3d at 1016.

### 2. Plaintiff's APA Claim

In his discussion of Claim Three in the Response, Plaintiff argues that "[a]ll administrative actions (including SAMs) by government agencies are governed by the Administrative Procedures Act (APA)" and cannot violate constitutional rights, in particular due process rights. *Response* [#60] at 15, 16.[8] Indeed, under the APA, a court may "hold unlawful and set aside agency action" that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Here, because the Court finds that Plaintiff has not sufficiently alleged a constitutional violation, any APA claim that Plaintiff intended to bring on those grounds therefore fails as well.

Accordingly, the entirety of Claim Three is **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

---

[8] As Defendants point out, the Response gave the first clear indication that Plaintiff intended to raise an APA claim, as Plaintiff's discussion of his claims in the Second Amended Complaint is focused on constitutional arguments. *See Reply* [#62] at 19. However, Plaintiff wrote in the "Jurisdiction" section of the complaint that he asserts jurisdiction pursuant to the APA. *See Second Am. Compl.* [#56] at 3. Construing the pleadings liberally, the Court addresses a possible APA claim. *See Hall*, 935 F.2d at 1110.

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#57] is **GRANTED**.  Claim One, Claim Two with respect to Plaintiff's communications with Ms. Lehliem, and Claim Three are **DISMISSED with prejudice**.  Claim Two with respect to the alleged interdiction of mail between Plaintiff's parents and Ms. Lehliem is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

IT IS FURTHER **ORDERED** that the Clerk of the Court shall close this case.[9]

DATED: September 28, 2017                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

---

[9]  Because Plaintiff's claims are dismissed in their entirety, all claims asserted against the John Doe Defendants are dismissed as well.